# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3947
_____

United States of America

*Plaintiff - Appellee*

v.

Tory Djuan Patterson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 21, 2016
Filed: December 22, 2016
[Unpublished]

_____

Before MURPHY, GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

Tory Djuan Patterson appeals a district court[1] order denying his motion to suppress evidence obtained during an allegedly unlawful search. For the reasons discussed below, we affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

On April 15, 2014, a Minnesota state court judge issued a warrant authorizing the search of a private dwelling located at 1006 East 6th Street in Duluth and of the person of Barbara Nicole Gilliam, a known drug dealer believed to reside at this address. Law enforcement agents believed they might find heroin, other controlled substances, and various items associated with drug trafficking based on their surveillance of Gilliam and knowledge of her prior criminal activity. Specifically, the affidavit in support of the warrant recounted Gilliam's history of and convictions for distributing crack cocaine in 2009 and 2010, and it established her transition to selling heroin in late 2013. There was some discrepancy, however, as to the precise location of her drug-trafficking activities at the time. On the one hand, a confidential reliable informant reported that Gilliam had sold heroin four times in the vicinity of 10th Avenue West and 6th Street, with one of the sales occurring in the seventy-two hours preceding the warrant application. Also within seventy-two hours of the application, investigators observed Gilliam meeting with several individuals, including a known drug dealer, near the same intersection. On the other hand, investigators noted that, between the suspicious meetings, Gilliam entered and exited a house near 10th Avenue East on 6th Street, later determined to be located at 1006 East 6th Street. The affidavit then confirmed that Gilliam's address of record was 1006 East 6th Street based on "police records, property information, and other databases," including Gilliam's own report to the Minnesota Department of Corrections as part of her supervised release. The warrant application also explained that "it is common for those involved in the distribution of controlled substances to meet with customers in the vicinity of their residence but not right at the residence."

Police executed the search warrant on April 16, the day after it was issued, only to discover that Patterson, his girlfriend, and several other individuals were living in the house. Gilliam was a frequent visitor who used the residence for storage. Nevertheless, the search still yielded evidence of criminal activity. In Patterson's bedroom closet, police discovered a sawed-off shotgun, marijuana, and drug

paraphenalia. The shotgun formed the basis of the subsequent charges against Patterson, which included one count of possession of an unregistered short-barreled shotgun and one count of felon in possession of a firearm.

Before trial, Patterson filed a motion to suppress this evidence, arguing that the search warrant failed to establish probable cause because much of the information in the affidavit was stale and, relatedly, because there was an insufficient nexus between the contraband to be discovered and the place to be searched. The magistrate judge agreed. His report and recommendation concluded that the search violated Patterson's Fourth Amendment rights, explaining that the evidence linking Gilliam's criminal activities around the intersection of 6th Street and 10th Avenue West with the residence on 6th Street near 10th Avenue East was "far too attenuated" to establish the requisite nexus for a search. The magistrate also deemed the *Leon* good-faith exception inapplicable because of his finding that law enforcement presented "no evidence of any reasonable connection between Gilliam's criminal activity and the residence at 1006 East 6th Street." After considering the matter *de novo*, the district court rejected the magistrate's recommendation. Of particular relevance, the court made the factual finding that "the references to 10th Avenue West were clear typographical errors, [intended to mean 10th Avenue East,] evidenced by the context in which the references were used." Further, even if Gilliam had been dealing drugs twenty blocks from the house, the district court concluded, the affidavit still established a sufficient nexus between the house and drug contraband to justify a search. With these pretrial issues resolved, the case proceeded to trial, Patterson was found guilty, and the district court sentenced him to 96 months' imprisonment. Patterson timely appealed, renewing his insufficient-nexus and staleness arguments as grounds for invalidating the search of the residence.

"On an appeal of a denial of a motion to suppress evidence, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (citation omitted). In

cases such as this, "[o]ur role is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted). "Probable cause exists when a 'practical, common-sense' inquiry that considers the totality of the circumstances set forth in the information before the issuing judge yields a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Although Patterson casts his challenge to the search as a question of law, both of his arguments turn on an implicit rejection of the district court's factual finding that the affidavit's "references to 10th Avenue West were clear typographical errors." Throughout his brief, Patterson suggests that Gilliam's drug peddling occurred near the intersection of 6th Street and 10th Avenue West, rather than 6th Street and 10th Avenue East. Based on this literal interpretation, not only were the reports of Gilliam's illicit activities near 10th Avenue West unhelpful to the investigators' attempt to show a nexus as to 1006 East 6th Street, but they actually cut against the likelihood that contraband would be found at the residence. Additionally, given that the averments concerning 10th Avenue West were the only two that occurred within seventy-two hours of the warrant application, Patterson suggests that the remaining information tying Gilliam to the residence was stale. Even if these arguments were valid on their face, we reject Patterson's underlying premise. The district court amply and convincingly explained why the affidavit references to 10th Avenue West "obviously referred to 10th Avenue East." As the court observed, the warrant application itself stated that Gilliam repeatedly came and went from a house in close proximity to her suspicious meetings, which would make little sense if the illicit activities had taken place near 10th Avenue West, on the other side of town. It is far easier to accept that the agent-affiant meant to refer to 10th Avenue East, which is just down the street from 1006 East 6th Street, than that he believed that an intersection located twenty blocks away was "in the vicinity of" the residence. Read

in this light, there is no doubt that the affidavit was sufficient to establish probable cause. *See United States v. Butler*, 594 F.3d 955, 961-62 (8th Cir. 2010) ("A mere typographical error does not . . . cast doubt on the affidavit's showing of probable cause to search the residence.") (citations omitted). Moreover, probable cause existed at the time of the search given the observations of illicit activity in the area within seventy-two hours of the affidavit. *See United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (noting that "there is no bright-line test for determining when information is stale" but rejecting one such argument in a narcotics case involving information more than two-weeks old) (citation omitted).

Accordingly, we affirm the district court's denial of the motion to suppress.

_____